# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SOUTHEAST MISSOURI HOSPITAL and ST. FRANCIS MEDICAL CENTER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case no. 1:07cv0031 TCM |
| C.R. BARD, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is again before the Court on a motion to dismiss, specifically, the motion

of defendant C.R. Bard, Inc. ("Bard") to dismiss for lack of standing, to strike allegations of

damages accruing earlier than February 2003, and to dismiss claims of a civil conspiracy.

[Doc. 139] Also pending is a related motion filed by Plaintiffs to convert Bard's motion to

dismiss to a motion for partial summary judgment. [Doc. 154]

### Background

At issue in the motion to dismiss are allegations in the second amended complaint.

Those allegations include the following.

Southeast Missouri Hospital and Saint Francis Hospital (collectively referred to as

"Plaintiffs") "purchased urological catheters produced, promoted, sold, marketed, and/or

distributed by Bard from January 1, 1999, to the present." (Compl.[1] ¶ 1; see also ¶¶ 13, 14.)

Bard allegedly engaged during this period in an anticompetitive scheme

> by using exclusionary dealing contracts, market share maintenance and compliance contracts, and penalty provisions that effectively tied other products to the purchase of its catheters purchases . . . with the intent and purpose of precluding other companies from competing in the relevant Urological Catheter Markets and leveraging its power in the Urological Catheter Markets into the markets for other products. In the face of competition from other manufacturers of Urological Catheters, . . . Bard improperly exercised its monopoly power to prevent and eliminate competition.

(Id. ¶ 5.) As a result of this alleged unlawful conduct, "Plaintiffs and all Class members" did not have the benefit of competitive pricing for urological catheters and did not have the opportunity to purchase better urological catheters. (Id. ¶ 6.)

Plaintiffs further allege that they are bringing this action on behalf of all persons or entities who purchased Bard's urological catheters in the United States from January 1, 1999, to present if such purchases were governed by Bard's contracts with "Group Purchasing Organizations" ("GPOs"). (Id. ¶ 16.) They are also bringing this action on their own behalf and on behalf of all persons or entities who purchased Bard's urological catheters in Missouri during this same time period if the purchases were governed by Bard's contracts with GPOs. (Id. ¶ 17.) After outlining the specifics of Bard's alleged unlawful conduct, Plaintiffs further allege that this conduct deprived them and "other Class members" of the benefit of competitive pricing and better products. (Id. ¶¶ 76, 78-79.)

Anticipating Bard's statute of limitations affirmative defense, Plaintiffs allege:

---

[1]Unless otherwise indicated, citations to "Compl." are to the second amended complaint.

82.  Plaintiffs and other members of the Class had no knowledge of Bard's unlawful scheme and could not have discovered the actual, cumulative effect of Bard's unlawful conduct at an earlier date by the exercise of due diligence.  Since individual hospitals and healthcare providers relied upon their respective GPOs and IDNs [integrated delivery networks] to negotiate favorable terms with the medical device manufacturers on their behalf, neither Plaintiffs nor the members of the Class could have discovered at an earlier date that Bard's anticompetitive actions resulted in artificially inflated prices for Urological Catheters.  As a result of Plaintiffs' lack of knowledge of the effects of Bard's unlawful scheme, Plaintiffs assert the tolling of any applicable statute of limitations affecting the right of action by Plaintiffs and all other Class members.

83.  Moreover, Bard's actions constitute a continuing violation in that Bard's anticompetitive practices resulted in unlawfully priced sales of Urological Catheters, and each and every sale of these products at artificially inflated prices is an overt act that injured Plaintiffs and the Class.  These artificially inflated prices continue to exist in the Urological Catheters Markets as . . . Urological Catheters manufacturers have not yet reached the economies of scale they would have reached absent Bard's unlawful conduct.  Upon each and every instance that Bard failed to disclose its exclusionary conduct and its effects on the prices of Urological Catheters, Bard knew or should have known that the undisclosed information was material to those who purchased such products.

84.  Therefore, each instance in which Bard engaged in the conduct complained of herein and each instance in which a member of the Class unknowingly remitted payment for Urological Catheters at artificially inflated prices constitutes part of a continuing violation and operates to toll any applicable statute of limitation.  Furthermore, Bard is estopped from relying on any statute of limitations defense because of its unfair and deceptive conduct.

(Id. ¶¶ 82-84.)

Citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Bard seeks to (a) dismiss the entire second amended complaint on the grounds that the absence of any allegation that either Plaintiff made the purchases outlined in their class definition deprives both Plaintiffs of standing, and (b) to strike any claim for damages that accrued earlier than February 2003 on statute of limitation grounds.  Bard's third argument, that Plaintiffs cannot

state a claim for civil conspiracy as alleged in Count V of their second amended complaint, has been rendered moot by the dismissal of that Count. Accordingly, the Court will only address the standing and statute of limitations arguments.

## Discussion

Standing. When, as in the instant case, the court addresses a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the basis of the pleadings, accepting as true all the factual allegations in the complaint, the standard of that review is the same as applied to Rule 12(b)(6) motions. See **Stalley v. Catholic Health Initiates**, 509 F.3d 517, 521 (8th Cir. 2007). That standard was set forth in the Court's memorandum and order of January 12, 2008, and will not be repeated here.[2]

"Under Article III of the United States Constitution, [this Court] may only adjudicate actual cases and controversies." **Pucket v. Hot Springs School Dist. No. 23-2**, 526 F.3d 1151, 1157 (8th Cir. 2008). Part of this case and controversy requirement is that a litigant have standing to invoke the court's jurisdiction. **Id.** "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." **Id.** (internal quotations omitted). "[This] injury must be 'concrete,' not 'conjectural' or hypothetical.'" **Id.** Accord **Nolles v. State Comm. for Reorg. of School Dist.**, 524 F.3d 892, 897-98 (8th Cir. 2008). Moreover, "[a]t the pleading

---

[2]In support of their opposition to the motion to dismiss, Plaintiffs refer to exhibits and by separate motion seek to convert Bard's motion to dismiss to a motion for partial summary judgment. This motion to convert will be denied.

stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." **Stalley**, 509 F.3d at 521.

In that portion of the complaint labeled "Parties," Plaintiffs allege that they have purchased Bard's urological catheters. Bard correctly notes that they do not allege that their purchases were through GPOs or IDNs and that this refinement is included in the definition of the nationwide and Missouri classes. Elsewhere in the complaint, however, Plaintiffs allege that they "and all Class members" did not have the benefit of competitive pricing for urological catheters and did not have the opportunity to purchase better urological catheters because of Bard's alleged unlawful conduct. Class members are those whose purchases of Bard's urological catheters were governed by GPOs. Although, as acknowledged by Plaintiffs, their allegations of being injured by the complained-of conduct could have been stated with more clarity, they do allege injury that is "'fairly traceable to the challenged action of the defendant.'" **Saunders v. Farmers Ins. Exch.**, 440 F.3d 940, 943 (8th Cir. 2006) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); **McClain v. American Econ. Ins. Co.**, 424 F.3d 728, 732 (8th Cir. 2005).

Accordingly, for purposes of a motion to dismiss, the Court finds that Plaintiffs have sufficiently alleged standing. Cf. **Chorosevic v. MetLife Choices**, No. 4:05cv2394 CAS, 2007 WL 2159475, *3 (E.D. Mo. 2007) (dismissing for lack of standing a plaintiff who never alleged that she used the insurance plan at issue and, consequently, had never suffered the injuries at issue).

Statute of Limitations. Plaintiffs allege in their second amended complaint violations of § 1 of the Sherman Act, 15 U.S.C. § 1 (Count I); of § 2 of the Sherman Act, 15 U.S.C. § 2

(Count II); of § 3 of the Clayton Act, 15 U.S.C. § 14 (Count III); and of Missouri's antitrust

law, Mo.Rev.Stat. § 416.031-161 (Count IV).  The first three claims are subject to the four-

year statute of limitations in 15 U.S.C. § 15b.  "Generally, th[is] period commences on the

date the cause of action accrues, that being, the date on which the wrongdoer commits an act

that injures the business of another."  **Varner v. Peterson Farms**, 371 F.3d 1011, 1019 (8th

Cir. 2004).  A party may be permitted, however, to file a complaint more than four years

after the events that give rise to the cause of action if the party can establish that there was

a continuing violation by which the plaintiff's interests were repeatedly invaded.[3]  **Id.**  This

exception requires an overt act by the defendant to restart the statute.  **Id.**  An overt act  (1)

"must be a new and independent act that is not merely a reaffirmation of the previous act",

and (2) "must inflict new and accumulating injury on the plaintiff."  **Id.**  "Acts that are

merely 'unabated inertial consequences' of a single act do not restart the statute of

limitations."  **Id.**

     The Eighth Circuit Court of Appeals held in **Varner** that the plaintiffs in an antitrust

action had failed to plead sufficient facts to establish an exception to toll the statute of

limitations.  **Id.** at 1020.  The plaintiffs had alleged enforcement of the initial contracts;

however, these allegations were not of any overt acts and did not toll the four-year statute

of limitations.  **Id.**  Plaintiffs in the instant case allege that each sale of the urological

---

[3]Courts have not applied the continuing violation theory to Clayton Act claims.  See **Midwestern Mach. Co. v. Northwest Airlines, Inc.**, 392 F.3d 265, 270 (8th Cir. 2004) (noting that theory has been applied claims under §§ 1 and 2 of Sherman Act, but not to Clayton Act claims).

catheters at unlawful prices and each unknowing remittance for payment are continuing

violations. "[A]cts that simply reflect or implement a prior refusal to deal or acts that are

merely unabated inertial consequences (of a single act) do not restart the statute of

limitations"; rather, "to apply the continuing violation theory to non-conspiratorial conduct,

new overt acts must be more than the unabated inertial consequences of the initial violation."

**Midwestern Mach. Co. v. Northwest Airlines, Inc.**, 392 F.3d 265, 270 (8th Cir. 2004). See

also **In re Travel Agent Com'n Antitrust Litig.**, No. 1:03CV30000, 2007 WL 3171675,

* 5 (N.D. Ohio 2007) ("[T]he fact that an antitrust plaintiff may suffer continuing damages

from an on-going conspiracy is irrelevant. In the antitrust context, the focus is on the time

of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt

acts.") (internal quotations omitted). Sales of a product pursuant to an allegedly illegal

arrangement are not new, overt acts, nor is the act of remitting payment for such sales a new,

over act. See **Eichman v. Fotomat Corp.**, 880 F.2d 149, 160 (9th Cir. 1989) ("[T]he passive

receipt of profits from an illegal contract by an antitrust defendant is not an overt act of

enforcement which will restart the statute of limitations."). To hold otherwise would

effectively abrogate the statute of limitations in situations such as the one now at issue

because each sale of a product pursuant to the underlying agreement would start the statue

of limitations running anew. See **Id.** (rejecting plaintiff's argument that the complained-of

lease tying agreement was continuing violation and each payment under such lease was new

injury for purposes of statute of limitations). Accordingly, Plaintiffs allegations in Counts

I and II are not exempted from the four-year statute of limitations based on the existence of

a continuing violation.[4]

Plaintiffs also allege that their claims in all Counts can extend back to January 1999[5]

because they could not have discovered the "actual, cumulative effect of Bard's unlawful

conduct at an earlier date by the exercise of due diligence." (Compl. ¶ 82.) In the antitrust

context, "a plaintiff who is not reasonably diligent may not assert fraudulent concealment"

to avoid the running of the statute of limitations. **Klehr v. A.O. Smith Corp.**, 521 U.S. 179,

194-95 (1997); accord **Kansas City, Mo. v. Federal Pacific Elec. Co.**, 310 F.2d 271, 284

(8th Cir. 1962). Plaintiffs do not allege, however, that there was any fraudulent concealment

of its "unlawful scheme" by Bard. They allege only that they did not earlier know of the

scheme and could not have known of it by exercise of due diligence. Although they refer to

fraudulent concealment in their memorandum in opposition to the motion to dismiss, they

do not cite to any allegations in their second amended complaint of fraudulent concealment

by Bard. Lacking such allegations, their claims of due diligence fail to toll the statute of

limitations.

For the foregoing reasons, the Court finds that Plaintiffs' claims in Counts I, II, and

III of any damages earlier than February 21, 2003, are dismissed.

Plaintiffs state a cause of action in Count IV for a violation of Missouri's antitrust law.

Missouri also has a four-year statute of limitations. See Mo.Rev.Stat. § 416.131.1. Section

---

[4]As noted above, see note 3, the allegations in Count III are not subject to the continuing violation exception.

[5]The Court notes that the significance of the January 1, 1999, date is not explained anywhere in the second amended complaint.

- 8 -

416.141, Mo.Rev.Stat., provides that Missouri antitrust laws are be "construed in harmony with ruling judicial interpretations of comparable federal statutes." See also **Associated Elec. Co-op v. Sachs Elec. Co.**, No. 86-3336-CV-S-4, 1987 WL 14499, *5 (W.D. Mo. 1987) ("Missouri Antitrust Law should be construed to provide for tolling where there is fraudulent concealment in order to insure uniformity in the treatment of federal and state antitrust claims.").  Thus, Plaintiffs' claims in Count IV are also restricted to the period on or after February 21, 2003.

## Conclusion

Considering only the pleadings before the Court, the Court finds that Plaintiffs have sufficiently alleged they have standing to bring their antitrust claims and have not sufficiently alleged any circumstances that would avoid the running of the four-year statute of limitations of 15 U.S.C. § 15b and of Mo.Rev.Stat. § 416.131.1.  Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant C.R. Bard, Inc. ("Bard") to dismiss is **GRANTED** in part and **DENIED** in part as set forth above.  [Doc. 139]

**IT IS FURTHER ORDERED** that the motion of Plaintiffs for conversion of the motion to dismiss to a motion for partial summary judgment is **DENIED**.  [Doc. 154]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  27th  day of August, 2008.